UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Terves LLC, | ) | CASE NO.  1:19-cv-01462-DAP |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | |
| Thompson Aluminum Casting Co., | ) | |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Innovex Downhole Solutions, Inc. | ) | |
| 4310 North Sam Houston Parkway East | ) | |
| Houston, Texas 77032, | ) | |
| | ) | |
| Third-Party                        Defendant. | ) | |

---

**MEMORANDUM IN SUPPORT OF DEFENDANT THOMPSON ALUMINUM
CASTING CO.'S MOTION TO DISMISS**

---

| | |
|---|---|
| JOHN S. CIPOLLA (0043614)<br>TRACY SCOTT JOHNSON (0064579)<br>CALFEE, HALTER & GRISWOLD LLP<br>The Calfee Building<br>1405 East Sixth Street<br>Cleveland, Ohio 44114-1607<br>216-622-8808<br>jcipolla@calfee.com<br>216-622-8564<br>tjohnson@calfee.com | PETER TURNER (0028444)<br>MEYERS, ROMAN, FRIEDBERG & LEWIS<br>28601 Chagrin Boulevard, Suite 600<br>Cleveland, Ohio 44122<br>Phone:  (216) 831-0042<br>Fax:     (216) 831-0542<br>Email: *pturner@meyersroman.com* |

*Attorneys for Defendant Thompson Aluminum Casting Co.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES CITED ........................................................................................ ii

BRIEF STATEMENT OF THE ISSUES TO BE DECIDED ................................................... 1

SUMMARY OF ARGUMENTS PRESENTED ....................................................................... 2

INTRODUCTION .................................................................................................................... 3

BACKGROUND ...................................................................................................................... 3

LEGAL STANDARD .............................................................................................................. 6

ARGUMENT ........................................................................................................................... 7

    Terves Admits That It Has No Idea Whether Thompson's Billets and Castings Infringe
    Any Claims of Either the '010 Patent or the '653 Patent. ...................................................... 7

    The Insufficiency of Terves' Complaint Is Not Excused by Its Inadequate Investigation. 9

    Terves Has Failed to Sufficiently Plead Direct Infringement of the '010 Patent. ............. 12

    Terves Has Failed to Sufficiently Plead Direct Infringement of the '653 Patent. ............. 17

    Terves Has Failed to Sufficiently Plead Willful Infringement of the '010 Patent. ........... 18

CONCLUSION ...................................................................................................................... 19

CERTIFICATION ................................................................................................................. 20

## <u>TABLE OF AUTHORITIES CITED</u>

**Cases**

*Artrip v. Ball Corp.,* 735 Fed. Appx. 708 (Fed. Cir. 2018) ............................................................ 6

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................ 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .......... 6

*Dimond Rigging Co., LLC v. BDP Int'l, Inc.,* 914 F.3d 435 (6th Cir. 2019)................................. 6

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 2012 U.S. Dist. LEXIS 29020 (S.D. Ohio Mar. 6, 2012) ..................................................................................................... 10

*Janssen Prods., L.P. v. Lupin Ltd.*, 2014 U.S. Dist. LEXIS 155248 (D.N.J. Mar. 12, 2014) ...... 11

*John Keeler & Co. v. Heron Point Seafood, Inc.*, 2016 U.S. Dist. LEXIS 171696 (N.D. Ohio July 8, 2016) ............................................................................................................................... 18

*John Keeler & Co. v. Heron Point Seafood, Inc.,* 2017 U.S. Dist. LEXIS 138010 (N.D. Ohio Aug. 28, 2017) ............................................................................................................................... 7

*Macronix Int'l Co. v. Spansion Inc.*, 4 F. Supp. 3d 797 (E.D. Va. 2014)................................. 7, 11

*Nutrinova Nutrition Specialties & Food Ingredients GmbH v. ITC*, 224 F.3d 1356 (Fed. Cir. 2000) ........................................................................................................................................... 11

*SIPCO, LLC v. Streetline, Inc.*, 230 F. Supp 3d 351 (D. Del. 2017) ............................................ 7

**Statutes**

35 U.S.C. § 271(a) .................................................................................................................. 7, 17

35 U.S.C. § 295.................................................................................................................. 10, 11, 12

**Federal Rules**

Rule 11 ......................................................................................................................................... 15

Rule 8 ........................................................................................................................................... 13

Rule 8(a)................................................................................................................................... 7, 13

## BRIEF STATEMENT OF THE ISSUES TO BE DECIDED

1.     Whether a plaintiff that admits in its Complaint that it does not know whether a defendant's products infringe the plaintiff's patents can plead sufficient factual matter in that Complaint to state a claim for patent infringement that is plausible on its face.

2.     Whether a plaintiff has not conducted a reasonable investigation into claims of patent infringement against a defendant when, as a part of its efforts to obtain and inspect products suspected of infringing, the plaintiff made no effort to contact the defendant to arrange to obtain and inspect the products prior to filing its Complaint.

3.     Whether allegations that a magnesium foundry operator: (1) knows of a patented composition and process for fabricating dissolvable magnesium compounds; (2) has billets and equipment on its premises associated with casting and fabricating magnesium compounds; and (3) has sold dissolvable magnesium compounds to a third-party constitute sufficient factual matter to make out a patent infringement claim that is plausible on its face when the plaintiff does not alleged: (a) that the patents cover every possible composition and method of fabrication used to make dissolvable magnesium compounds; or (b) that the third party's products infringe the patents.

4.     Whether a single sentence allegation made upon "information and belief" with no meaningful facts does not plead sufficient factual matter for a claim of willful patent infringement that is plausible on its face.

## SUMMARY OF ARGUMENTS PRESENTED

The patents-in-suit are complex, covering only very specific formulations for, and methods used in, the manufacture of dissolvable magnesium compounds.  Plaintiff admits that it does not know whether defendant's products meet the limitations of the patents-in-suit.  Plaintiff never contacted defendant to ask to inspect the products or learn more about the methods used in their fabrication.  Instead, plaintiff bases its patent infringement claims on factual allegations that defendant: (1) knew of the compositions and methods disclosed in the patents; (2) operated a magnesium foundry where magnesium billets and equipment used in casting magnesium can be found; and (3) is known to have sold dissolvable magnesium to a third-party. And, while plaintiff supposes that the products sold to the third party were to be converted into dissolvable drilling tools, plaintiff does not allege that the composition of the dissolvable magnesium in the third-party's drilling tools infringe the patents (or that it was unable to obtain samples of those drilling tools).  Moreover, plaintiff does not allege that its patents cover every conceivable composition for, or method used in, the manufacture of dissolvable magnesium compounds.

Under these circumstances, plaintiff has failed to plead sufficient factual matter to state a claim for patent infringement that is plausible on its face.  Plaintiff's failure to obtain sample products, or review the methods used in their manufacture, does not excuse the insufficiency of plaintiff's pleading when plaintiff failed to contact the defendant to obtain samples and information in advance of filing its Complaint.

Finally, plaintiff's single sentence allegation made upon "information and belief" with no meaningful facts pleads insufficient factual matter for a claim of willful patent infringement that is plausible on its face.

2

**INTRODUCTION**

On June 25, 2019, Plaintiff, Terves LLC ("Terves"), filed its Complaint (Dkt. No.1) ("Complaint") asserting that Defendant, Thompson Aluminum Casting Co. ("Thompson"), purportedly had infringed and was infringing two of Terves' patents.  Terves' patents each cover very specific compositions of, and methods used to fabricate, dissolvable magnesium and magnesium alloys.  Yet, Terves admits in its Complaint that it has absolutely no knowledge of the composition of Thompson's dissolvable magnesium alloys or of the methods used by Thompson to fabricate them.  A complaint that alleges patent infringement claims while, at the same time, admitting no knowledge of whether the patents are actually infringed should be dismissed.

**BACKGROUND**

Terves alleges that Thompson is purportedly infringing two of its patents—U.S. Patent No. 9,903,010 (the '010 Patent) and U.S. Patent No. 10,329,653 (the '653 Patent).  The patents cover particular compositions of "dissolvable" metals and metal alloys used as "down hole" components in the drilling of wells.  The patents-at-issue are lengthy and complex.  The claims cover very specific combinations of metals, alloys, and elements.  The claims require that the combinations of metals, alloys, and elements be made according to very specific steps, including both heating and cooling steps.  Further, the claims cover only the formation of "galvanically-active" phases by a single, specific mechanism ("in situ precipitation") or specific metal compositions that are also fabricated into specific drilling tools (such as "a ball or other tool component in a well drilling or completion operation").

The '010 Patent claims several methods for the fabrication of dissolvable metals by causing the formation of galvanically-active regions within the base metal or alloy.  Claim 1 of the '010 Patent is representative of the patent's other claims for purpose of this motion.  Claim 1 reads:

4822-7253-0341, v.2

1. A method of controlling the dissolution properties of a magnesium composite to enable the controlled dissolving of the magnesium composite comprising the steps of:

heating magnesium or a magnesium alloy to a point above its solidus temperature;

adding an additive material to said magnesium or magnesium alloy while said magnesium or magnesium alloy is at a temperature that is above said solidus temperature of said magnesium or magnesium alloy and a temperature that is less than a melting point temperature of said additive material to form a mixture, said additive material having a greater melting point temperature than said solidus temperature of said magnesium or magnesium alloy, said additive material constituting about 0.05 wt %-45 wt % of said mixture, said additive material including one or more metals selected from the group consisting of copper, nickel, cobalt, titanium, and iron;

dispersing said additive material in said mixture while said magnesium or magnesium alloy is above said solidus temperature of said magnesium or magnesium alloy; and,

cooling said mixture to form said magnesium composite, said magnesium composite including in situ precipitation of galvanically-active intermetallic phases.

'010 Patent at Claim 1 as corrected by May 21, 2019 Certificate of Correction.  The methods claimed by the '010 Patent each depend upon the addition of one or more elements to the base metal or alloy in such a way that the element(s) combine(s) with the underlying base metal to form galvanically-active regions via "in situ precipitation."  Accordingly, the '010 Patent does not claim methods for the formation of dissolvable metals or alloys via methods other than "in situ precipitation."

The '653 Patent is directed to very specific metal or alloy compositions which either exhibit particular dissolution rates or are fashioned into particular tools.  The '653 Patent's claims can be generally subdivided into two groups.  The first group of claims require "in situ precipitation of galvanically-active intermetallic phases" and that the resulting metal alloy meet certain threshold dissolution rates.  Claim 1 of the '653 Patent is representative of this group of claims for purposes of this motion.  It reads:

4

1. A magnesium composite that includes in situ precipitation of galvanically-active intermetallic phases to enable controlled dissolution of said magnesium composite, said magnesium composite comprising a mixture of magnesium or a magnesium alloy and an additive material, said additive material having a greater melting point temperature than a solidus temperature of said magnesium, said additive material constituting about 0.05 wt. %-45 wt. % of said mixture, said additive material forming precipitant in said magnesium composite, said additive material includes one or more metals selected from the group consisting of copper, nickel, iron, and cobalt, said magnesium composite has a dissolution rate of at least 5 mg/cm$^2$/hr. in 3 wt. % KCl water mixture at 90° C.

'653 Patent at Claim 1. Independent Claims 12, 49, 73, 74 each fall into this first group.[1]

The second group of claims in the '653 Patents require that the resulting product be fabricated using a combination of specific metals in set proportions and that the resulting product be used for a particular purpose (*i.e.* as "a ball or other tool component in a well drilling or completion operation"). Claim 25 of the '653 Patent is representative of this group of claims for purposes of this motion. It reads:

25. A dissolvable magnesium alloy composite for use in a ball or other tool component in a well drilling or completion operation, said dissolvable magnesium alloy composite comprising at least 85 wt. % magnesium; one or more metals selected from the group consisting of 0.5-10 wt. % aluminum, 0.05-6 wt. % zinc, 0.01-3 wt. % zirconium, and 0.15-2 wt. % manganese; and about 0.05-45 wt. % of a secondary metal to form a galvanically-active intermetallic particle that promotes corrosion of said dissolvable magnesium alloy composite, said secondary metal including one or more metals selected from the group consisting of copper, nickel, cobalt, titanium and iron, said magnesium alloy composite has a dissolution rate of at least 5 mg/cm$^2$/hr. in 3 wt. % KCl water mixture at 90° C.

'653 Patent at Claim 25. Independent Claims 29, 33, 37, 41, and 45 each fall into this second group.

---

[1] Independent Claims 49, 73 and 74 require both "in situ precipitation of galvanically-active intermetallic phases" and that the resulting composite be used "in a ball or other tool component in a well drilling or completion operation."

## **LEGAL STANDARD**

To avoid dismissal, Terves' Complaint must contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 884 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1973, 167 L. Ed. 2d 929, 949 (2007)).[2] In reviewing this dismissal motion, this Court "accepts all factual allegations in the complaint as true, construed in the light most favorable to the plaintiff." *Dimond Rigging Co., LLC v. BDP Int'l, Inc.,* 914 F.3d 435 (6th Cir. 2019). This Court need not, however, accept as true the complaint's "legal conclusions." *Iqbal*, 129 S. Ct. at 1949-50. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 1950. Thus, a review of Terves' Complaint in this case may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* This Court may then determine whether the factual allegations remaining in the complaint "plausibly give rise to an entitlement of relief." *Id.* Though the plausibility inquiry "is not akin to a probability requirement," the Complaint should be dismissed if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct . . ." *Id.* at 1949-50 (internal quotation marks omitted). To survive dismissal, Terves must "nudge [its] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

To state a claim for direct infringement, Terves must explicitly plead facts to plausibly support the assertion that a defendant "without authority makes, uses, offers to sell, or sells any

---

[2] The Federal Circuit recently confirmed that the *Iqbal* and *Twombly* pleading standard applies to direct infringement claims. *Artrip v. Ball Corp.,* 735 Fed. Appx. 708, 714 n.4 (Fed. Cir. 2018).

patented invention during the term of the patent." 35 U.S.C. § 271(a).[3]  A complaint that does not contain specific factual allegations but instead "simply alleges that each element of a cited claim is infringed and then parrot[s] the claim language for each element… [] simply does not satisfy the notice and showing requirements of Rule 8(a)." *Macronix Int'l Co. v. Spansion Inc.*, 4 F. Supp. 3d 797, 804 (E.D. Va. 2014). Though a plaintiff's factual allegations need not be overly detailed, "the absence of 'any factual allegations' to support" infringement allegations is fatal. *SIPCO, LLC v. Streetline, Inc.*, 230 F. Supp 3d 351, 353 (D. Del. 2017).

## ARGUMENT

### A.  Terves Admits That It Has No Idea Whether Thompson's Billets and Castings Infringe Any Claims of Either the '010 Patent or the '653 Patent.

Terves has no idea whether Thompson is infringing its patents or not.  And, Terves admits this in its Complaint.  Terves admits that it has not acquired and has not inspected any of the castings or billets that Terves asserts might be infringing its patents.  Complaint at ¶ 28.  Terves further admits that it "is unable to determine [the processes used by Thompson] with certainty." *Id.* at ¶ 35.  Still further, Terves admits that it does not have "proof" of Thompson's infringement. *Id.* at ¶ 28.  Still further, Terves admits that "Terves can not [sic] know for certain . . . [whether] Thompson's casting process or the metallurgical characteristics of the magnesium billets manufactured by Thompson."  *Id.*

---

[3] In 2015, Federal Rule of Civil Procedure 84 and the accompanying forms were eliminated. Accordingly, notice pleadings using Form 18 for patent infringement cases no longer satisfies Rule 8(A). Now, this Court must analyze the sufficiency of a patent infringement pleading under Rule 8(A) in light of the standards articulated in *Twombly* and *Iqbal*.  *See John Keeler & Co. v. Heron Point Seafood, Inc.,* 2017 U.S. Dist. LEXIS 138010 (N.D. Ohio Aug. 28, 2017) (finding that motion to dismiss patent cases are governed by the standards articulated in *Twombly* and *Iqbal*).

Yet, without such knowledge, it is impossible for Terves to know or factually allege that Thompson's billets meet the composition or processing limitations set forth in each of the claims of the '010 Patent and the '653 Patent.  For example, Terves cannot factually know or allege that Thompson added an additive material "to said magnesium or magnesium alloy while said magnesium or magnesium alloy is at a temperature that is above said solidus temperature of said magnesium or magnesium alloy and a temperature that is less than a melting point temperature of said additive material to form a mixture" which is a requirement of Claim 1 of the '010 Patent.  Nor can Terves factually know or allege that Thompson's "magnesium composite [includes] in situ precipitation of galvanically-active intermetallic phases" which is another requirement of Claim 1 of the '010 Patent.  Nor can Terves factually know or allege the Thompson added an "additive material constituting about 0.05 wt. %-45 wt. % of said mixture, said additive material forming precipitant in said magnesium composite" which is a requirement of Claim 1 of the '653 Patent.  Nor can Terves factually know or allege that Thompson's products have a "dissolution rate of at least 5 mg/cm$^2$/hr. in 3 wt. % KCI water mixture at 90° C" which is a requirement of Claim 25 of the '653 Patent.  It is not surprising that the Complaint includes no factually supported allegation regarding the actual composition of any of Thompson's products or regarding the processes used to fabricate them since Terves admits to having no factual knowledge regarding "Thompson's casting process or the metallurgical characteristics of the magnesium billets manufactured by Thompson."  Complaint at ¶ 28.

Given that Terves has no idea whether or not it has a valid claim for direct infringement, it is not surprising that the remainder of the Complaint is a hodgepodge of legal conclusions calculated to create an aura of wrongdoing.  However, the law requires more than mere suspicions of wrongdoing in order to invoke the power of this Court and confront an opponent with the

8

staggering cost of defending a patent infringement claim. What the law requires is well-plead factual allegations establishing that the alleged wrongdoing is plausible. *Iqbal*, 129 S. Ct. at 1949. Suspicions of wrongdoing are not enough. Allegations that wrongdoing is possible are not enough. Within the framework of what the law requires to plead a claim, a plaintiff should not be allowed to admit in its Complaint that it has no idea whether it has a valid patent infringement claim and still have that Complaint survive dismissal.

**B.     The Insufficiency of Terves' Complaint Is Not Excused by Its Inadequate Investigation.**

Terves attempts to excuse its ignorance of whether Thompson is actually infringing its patents in making its claim. Terves alleges that, "[d]espite its reasonable efforts, Terves has been unable to obtain dispositive proof of Thompson's infringement . . ." Complaint at ¶ 28. Terves also alleges that "Terves has made reasonable efforts to determine the processes used by Thompson . . ." *Id.* at ¶ 35. Terves' self-serving characterizations of its own efforts as "reasonable" are legal conclusions. Accordingly, they should be afforded no weight. Rather, this Court should independently consider whether the facts plead by Terves evidence reasonable efforts in attempting to investigate its claims.

Terves asserts that four facts show that its investigation was reasonable. First, Terves alleges that "Thompson manufactures the infringing billets behind closed doors at its secure facility, where Terves has no access." *Id.* at ¶ 28. Second, Terves alleges that it was "unable to buy any of the infringing billets directly from Thompson or on the open market." *Id.* at ¶ 29. Third, Terves alleges that it "investigat[ed] the market to determine if Thompson's casting could be purchased on the open market . . ." *Id.* at ¶ 35. Fourth, Terves' alleges that it "investigat[ed] Thompson and its Cuyahoga Heights' facility to determine whether its specific manufacturing processes could be determined lawfully . . ." *Id.*

9

Terves' factual allegations are insufficient to establish its "reasonable" efforts in investigating its claims. Terves' four factual allegations really distill down to only two facts: (1) Terves could not buy the castings "on the open market"; and (2) Thompson manufactures its products in its facility.  Critically missing from the Complaint is any allegation that, before filing its Complaint, Terves ever asked Thompson to: (i) inspect one or more castings or billets; (ii) examine Thompson's facilities; (iii) observe its casting operations; or (iv) review the process documentation associated with the fabrication of the billets or castings suspected of being infringing.  *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 2012 U.S. Dist. LEXIS 29020, at \*16 (S.D. Ohio Mar. 6, 2012) (finding plaintiff's pre-suit investigation inadequate when the plaintiff made no effort whatsoever to obtain information from the defendant).  Of course, Terves does not make these allegations because Terves never asked Thompson to assist in its investigation.

Thompson submits that this Court should find that Terves acted unreasonably in failing to engage with Thompson to seek the information that it did not have but undeniably needed in order to assess its claims.  This Court should encourage parties to communicate regarding possible claims in advance of the filing of lawsuits.  To do otherwise is to invite litigants to remain willfully ignorant of facts that might otherwise disprove their claims so that they can proceed with litigation, waste the time and resources of this Court, and use the threat of litigation (and associated costs) as a lever to extort in settlement moneys and admissions to which they have no entitlement even if the matter proceeded to a final adjudication.  This Court should not reward this behavior.  The only way to deter willful ignorance in pleading is to not allow it to excuse a lack of factual support for alleged claims.

Terves also attempts to rely upon 35 U.S.C. § 295 to excuse its willful ignorance.  Terves

10

alleges that "Terves is entitled to the presumption that Thompson is using the processes that infringe one or more claims of the '010 Patent under 35 U.S.C. § 295."  Complaint at ¶ 35. However, 35 U.S.C. § 295 does not absolve Terves from its willful ignorance at the pleading stage of a case.  35 U.S.C. § 295 reads:

> In actions alleging infringement of a process patent based on the importation, sale, offer for sale, or use of a product which is made from a process patented in the United States, if the court finds—
>> (1) that a substantial likelihood exists that the product was made by the patented process, and
>> (2) that the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable to so determine,
> the product shall be presumed to have been so made, and the burden of establishing that the product was not made by the process shall be on the party asserting that it was not so made.

35 U.S.C. § 295.  On its face, 35 U.S.C. § 295 is a burden shifting mechanism that applies either at the summary judgment stage or at trial in a patent infringement case—not at the pleading stage. *Nutrinova Nutrition Specialties & Food Ingredients GmbH v. ITC*, 224 F.3d 1356, 1359-60 (Fed. Cir. 2000) (finding that the ALJ did not error in determining whether the statute applied at trial rather than during discovery); *Janssen Prods., L.P. v. Lupin Ltd.*, 2014 U.S. Dist. LEXIS 155248, at *116-8 (D.N.J. Mar. 12, 2014) (applying the statute in deciding a summary judgement motion). "Section 295 is aimed at offshore infringers from whom the patentee cannot obtain discovery comparable to that required under the Federal Rules of Civil Procedure." *Janssen Products*, 2014 U.S. Dist. LEXIS 155248 at *116.  The statute should not be applied where a party cooperates in discovery even when the patent owner has been unsuccessful in obtaining all of the information that it might want or need.  *Id*. at *118 (refusing to apply the statute where it cannot be said that the defendants have been non-cooperative or have thwarted the patent owner's efforts at discovery).

11

Here, and at this stage of the litigation, there is absolutely no reason to apply Section 295 presumption.  First, Terves did not undertake a "reasonable effort" to determine the process that was used prior to filing its Complaint.  Second, Thompson has been cooperative in informally providing Terves the information that it has requested following this Court's July 10, 2019 telephonic status conference.  Terves' reference to this statute in its Complaint is a complete red herring.

Terves elected to remain willfully ignorant of the facts and proceeded to file a lawsuit anyway.  This behavior should be discouraged.  This Court should dismiss the Complaint.  Since the parties have exchanged information, and Terves' counsel contends that it has been supplied enough factual information to "confirm[]" its claims, if Terves has a claim, it can re-plead it.  Of course, since Thompson has not sold a product remotely like the ones described in the patents since well before the '653 Patent was issued, Thompson doubts Terves' will actually re-plead its claims.  Thompson believes that one or both of the patent claims will simply go away should this Complaint be dismissed.

**C.**     **Terves Has Failed to Sufficiently Plead Direct Infringement of the '010 Patent.**

As discussed above, Terves concedes that it does not know what is in Thompson's castings and billets or how the castings and billets were made.  Nonetheless, Terves alleges:

> 32.     Upon information and belief, the methods used by Thompson to manufacture certain magnesium castings are covered by one or more claims of the '010 patent.

> 33.     By practicing those methods of manufacture, Thompson is infringing one or more claims of the '010 patent.

> 34.     For example, as to claim 1 of the '010 patent, upon information and belief, Thompson is manufacturing magnesium castings by: (a) melting magnesium or magnesium alloy in a furnace (i.e., "heating" it "to a point above its solidus temperature"), (b) adding copper, nickel, cobalt, titanium, or iron as an additive (that constitutes about .05 wt % to 45 wt % of the

12

> mixture), where the additive has a higher melting point than the magnesium
> or alloy, and (c) cooling the magnesium composite, where the composite
> includes in situ precipitation of galvanically-active intermetallic phases.

Complaint at ¶¶ 32-34.  Paragraphs 32 and 33 state legal conclusions and are not entitled to an

assumption of truth.  *Iqbal*, 129 S. Ct. at 1950.  Paragraph 34 alleges that each element of the cited

claim is met by parroting the claim language.  Such an allegation "does not satisfy the notice and

showing requirements of Rule 8(a)." *Macronix Int'l Co.*, 4 F. Supp. 3d at 804.

The limited factual support that Terves pleads behind the '010 Patent infringement claim

appears in paragraph 35 of the Complaint.  There, Terves pleads—or re-pleads from elsewhere in

the Complaint—four facts.  These four facts alone, Terves contends, give rise to a "substantial

likelihood" that Thompson made certain castings using the processes claimed in the '010 Patent.

However, "substantial likelihood" is not the correct standard for determining whether a claim has

been sufficiently plead under Rule 8.  Rather, the question for this Court is whether the facts

alleged "plausibly give rise to an entitlement of relief." *Iqbal*, 129 S. Ct. at 1950.  Here, they do

not.

First, Terves alleges that it taught certain methods to Thompson which are now the subject

of the '010 Patent.[4]  Complaint at ¶ 35.  Of course, what Terves does not acknowledge is that

Terves taught these same methods to the world (to the extent they are purportedly disclosed in the

'010 Patent) when the '010 Patent's application was published.  One purpose of the patent system

is to encourage the disclosure of inventions in exchange for a limited right to exclude persons from

---

[4] Terves engaged Thompson to fabricate dissolvable magnesium castings and parts.  Complaint at
¶¶ 21-22. Terves' claims that Thompson learned of the processes covered by the patents during
that engagement.  Complaint at ¶ 23.  But, of course, Terves also alleges that Thompson has
knowledge of the '010 Patent, which also would have taught Thompson the processes covered by
the '010 Patent.

13

practicing those inventions for a period of time.  If the fact that a patent owner taught a method to an accused infringer could make a claim of patent infringement more plausible, such a fact could be plead in every case of patent infringement.

Second, Terves alleges that certain castings seen in a picture taken at Thompson's facility "look the same" as Terves' patented castings.  *Id.  See also id.* at ¶ 25.  However, none of the '010 Patent claims describe a particular physical configuration for the claimed composition of magnesium or magnesium alloy when cast.  And, Terves has plead no physical attribute seen in the photographs that would specifically differentiate potentially infringing castings from non-infringing castings or support its supposition that the castings are somehow the same.  In the absence of additional factual allegations explaining why the castings seen in the picture appear different from other potentially non-infringing castings, Terves' allegation is, at most, a statement that certain magnesium castings in the photo appear to be castings.  It is hardly surprising that a magnesium foundry, such as Thompson, has magnesium castings in its factory.

Third, Terves alleges that Thompson has a magnesium pump "that would be used in the processes covered by one or more claims of the '010 Patent."  *Id.* at ¶ 35.  Again, none of the claims in the '010 Patent describe the use of a pump, let alone a particular pump, in the claimed processes.  Further, Terves' has plead no facts tying the use of a magnesium pump to any of the elements of any of the claims in the '010 Patent.  Still further, Terves has not plead that a magnesium pump could not or would not be used in casting magnesium and magnesium alloys that do not infringe.  Once again, it is hardly surprising that a magnesium foundry—such as Thompson—has equipment and tooling in its foundry—such as a magnesium pump—that is used in the casting of magnesium.

14

Fourth, Terves alleges that "Thompson is selling dissolvable magnesium castings to Innovex, which would only be using the casting to manufacture dissolvable drilling tools and hence the castings are likely within the scope of the '010 Patent." *Id. See also id.* at ¶¶ 26-27. To start, the only fact that is actually plead in this sentence is that Thompson is selling dissolvable magnesium castings to Innovex. The rest of the sentence is a supposition built on top of a supposition. The first supposition is that castings sold by Thompson must be used to manufacture dissolvable drilling tools by Innovex. The second supposition is that Innovex's dissolvable drilling tools likely infringe the '010 Patent. Both of these statements are speculative. Neither of them is a fact and, therefore, they should both be disregarded.

Importantly, Terves does not allege that all dissolvable drilling tools manufactured by Innovex infringe the '010 Patent. Indeed, Terves goes out of its way to plead around this very important point. Why is that? While Terves attempts to explain away its failure to acquire and test castings from Thompson, Terves makes no effort to explain why it has not acquired dissolvable drilling tools from Innovex and tested them. Indeed, Terves concedes that Innovex "manufactures and sells drilling tools made of dissolvable magnesium materials." *Id.* at ¶ 27. If the whole basis of Terves' claim is that Thompson has supplied or is supplying castings to Innovex and that Innovex is, in turn, converting those castings into infringing dissolvable magnesium drilling tools, it is reasonable to expect Terves to acquire samples, and confirm the infringing metal composition, of Innovex's tools. However, Terves has not done this, or if it has, it has concluded that Innovex's tools do not infringe.[5]

_____

[5] The most that Terves is willing to allege under the threat of Rule 11 sanctions is that certain tooling obtained from undisclosed "third-parties" were tested and, "upon information and belief . . . cast magnesium composites that are used for dissolvable drilling tools are ***likely*** covered by one or more claims of each of the Terves' Patents." *Id*. at ¶ 27 (emphasis added). This allegation

15

In either event, Terves does not factually plead that any Innovex tools infringe the '010 Patent.  Accordingly, the only fact that this Court is left with is that Thompson has sold castings to Innovex, a company that makes dissolvable drilling tools that apparently do not infringe the '010 Patent.  Thompson submits that this allegation gives rise to the strong inference that its castings do not infringe the '010 Patent.  But, even if the allegation does not refute Terves' infringement claim, it certainly does not make the claim plausible.

In summary, Terves has plead four facts in support of its claim of infringement of the '010 Patent.  First, Terves alleges that it taught Thompson the process, just like the patent purportedly is supposed to do for anyone who reads it.  Second and third, Terves alleges that Thompson has magnesium castings on its foundry floor and a magnesium pump that is used in casting magnesium, just like every other magnesium foundry.  Finally, Terves alleges that Thompson has supplied its magnesium castings to Innovex, a competitor of Terves who makes dissolvable drilling tools (some or all of which drilling tools do not infringe the '010 Patent).  This combination of facts simply does not state a plausible claim of infringement of the '010 Patent. *Iqbal*, 129 S. Ct. at 1949-50 (finding that a Complaint should be dismissed if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct").

---

borders on the ridiculous.  The allegation does not identify the source of the cast magnesium composites that were allegedly tested.  Were they from Innovex or another supplier? Did Terves test any Innovex tooling?  Second, Terves does not allege that the tooling that was tested actually infringed any claim of any patent.  Terves alleges only that the tooling **likely** infringed some claim of one of the patents.  Why the uncertainty?  What did Terves need to know that it did not know to confirm infringement?  This allegation falls far short of setting forth even a reasoned speculative basis, let alone a plausible factual basis, for any infringement claim.

16

**D.**     **Terves Has Failed to Sufficiently Plead Direct Infringement of the '653 Patent.**

Once again, as discussed above, Terves concedes that it does not know what is in Thompson's castings and billets or how the castings and billets were made.  Terves starts its infringement claim for the '653 Patent in the same fashion that it started its infringement claim for the '010 Patent—two paragraphs of legal conclusions and a single paragraph that does nothing more than recite that each element of a cited claim has been met.  Complaint at ¶¶ 38-40.  For all of the reasons set forth in the prior section, these allegations are insufficient to make out a claim for infringement of the '653 Patent.

Similarly, for all of the reasons set forth in the prior section, the additional four factual allegations that Terves made in support of the '010 Patent also do not make plausible a claim of infringement of the '653 Patent.

Additionally, the '653 Patent infringement claim suffers from one additional fatal defect. The '653 Patent issued on the same day that Terves' filed its Complaint—June 25, 2019.  In order to make out a claim for infringement, Terves must allege that Thompson made, used, offered to sell, or sold an allegedly infringing billet or casting after the issuance of the '653 Patent. 35 U.S.C. § 271(a).  The Complaint makes no reference as to the timing of any sales or offers to sell, and given the timing of the issuance of the '653 Patent and the filing of the Complaint, it is unreasonable to assume that a sale occuring in the past took place during the term of this patent. To the extent that Terves desires to state a claim with respect to the '653 Patent, Terves must specifically allege that the manufacture, use, or sale of allegedly infringing billets and castings was ongoing at the time the Complaint was filed and that such manufacturing, use, or sales continued after the issuance of the patent.  This, Terves has not done.  Accordingly, for this additional reason, the '653 Patent infringement claim should be dismissed.

4822-7253-0341, v.2

**E.     Terves Has Failed to Sufficiently Plead Willful Infringement of the '010 Patent.**

Terves sets for a single allegation supporting its claim that Thompson willfully infringed the '010 Patent.  It reads:

> 36.     Upon information and belief, Thompson has knowledge of the '010 patent, knows that its manufacturing activities infringe one or more claims of the '010 patent, and thus its infringement is and continues to be willful and deliberate.

Complaint at ¶ 36.  This single formulaic recitation is insufficient to support a claim of willful infringement.

In order to plead willful infringement, Terves must "allege sufficient facts to create a plausible inference that [Thompson] had knowledge of patents-in-suit prior to the filing of the Complaint." *John Keeler & Co. v. Heron Point Seafood, Inc.*, 2016 U.S. Dist. LEXIS 171696, at *11 (N.D. Ohio July 8, 2016).[6]  However, here, Terves alleges no facts supporting either of the legal conclusions set forth in paragraph 36.  No facts are plead supporting the supposition that Thompson knew of the '010 Patent.  No facts are plead supporting the supposition that Thompson knew that its activities were infringing the '010 Patent.  Indeed, Terves alleges no facts whatsoever in support of its willful infringement claim, just legal conclusions.  "Courts regularly dismiss willful infringement claims under similar circumstances."  *John Keeler & Co.,* 2016 U.S. Dist. LEXIS 171696, at *12 (dismissing a willful infringement claim as insufficiently supported).  Because Terves has not factually supported its allegations of knowledge, either of the patent or that its activities were infringing, Terves' willful infringement claim should be dismissed.

---

[6] *John Keller & Co.* was decided with knowledge of the United States Supreme Court's decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 195 L. Ed. 2d 278 (2016). *John Keeler & Co.,* 2016 U.S. Dist. LEXIS 171696, at *10 n.2.

18

## CONCLUSION

Terves should not be permitted to admit that it has no idea whether or not its patents are being infringed while pleading claims of patent infringement in a Federal Court.  Because Terves has failed to plead sufficient facts both to excuse its limited pre-filing investigation or to make plausible its claims of patent infringement, Terves' Complaint should be dismissed.

Dated: September 13, 2019                              Respectfully submitted,

| /s/ John S. Cipolla | /s/ Peter Turner |
|---|---|
| JOHN S. CIPOLLA (0043614) | Peter Turner (0028444) |
| TRACY SCOTT JOHNSON (0064579) | Email: *pturner@meyersroman.com* |
| CALFEE, HALTER & GRISWOLD LLP | MEYERS, ROMAN, FRIEDBERG & LEWIS |
| The Calfee Building | 28601 Chagrin Boulevard, Suite 600 |
| 1405 East Sixth Street | Cleveland, Ohio 44122 |
| Cleveland, Ohio 44114-1607 | Phone:  (216) 831-0042 |
| 216-622-8808 | Fax:     (216) 831-0542 |
| jcipolla@calfee.com | |
| 216-622-8564 | |
| tjohnson@calfee.com | |

*Attorneys for Defendant Thompson Aluminum Casting Co.*

## <u>CERTIFICATION</u>

This case has yet to be assigned to a case management track.  This memorandum complies

with the page limitation set forth in Local Rule 7.1(f) for cases that are unassigned.


<u><i>/s/ John S. Cipolla</i></u>

JOHN S. CIPOLLA (0043614)
*One of the Attorneys for*
*Defendant Thompson Aluminum Casting Co.*

4822-7253-0341, v.2

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that a copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT THOMPSON ALUMINUM CASTING CO.'S MOTION TO DISMISS** was filed electronically on this 13th day of September, 2019. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ John S. Cipolla*
JOHN S. CIPOLLA (0043614)
*One of the Attorneys for*
*Defendant Thompson Aluminum Casting Co.*

21